

# In the
# Missouri Court of Appeals
## Western District

| | | |
|---|---|---|
| MARILYN CARMACK, | ) | |
| | ) | |
| Respondent, | ) | WD83184 |
| | ) | |
| v. | ) | OPINION FILED: June 23, 2020 |
| | ) | |
| TRAVIS CARMACK AND TEMPLE | ) | |
| I. BAXLEY, | ) | |
| | ) | |
| Appellants. | ) | |

**Appeal from the Circuit Court of Chariton County, Missouri**
The Honorable Terry A. Tschannen, Judge

Before Division One: Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Thomas N. Chapman, Judge


Travis Carmack and Temple Baxley ("Siblings") appeal the trial court's judgment

("Judgment") in favor of Marilyn Carmack ("Wife") finding that Terry Carmack

("Husband") designated Siblings as the primary beneficiary of Husband's Individual

Retirement Account ("IRA") in fraud of Wife's marital rights under section 474.150.1.[1]

---

[1]All statutory references are to RSMo 2016 as updated through the date of Husband's death on October 11, 2018. Section 474.150 was amended effective August 28, 2018. However, the 2018 amendments to the statute, do not appear to have materially altered the statute's intended scope. Thus, even were we to apply the version of section 474.150 in effect at the time Husband altered the beneficiary designation on his IRA account in September 2016, we would not reach a different result.

Siblings argue the trial court erred because (1) the trial court's Judgment was not supported by substantial evidence, and (2) section 474.150.1 does not apply to IRAs. Finding no error, we affirm.

## Factual and Procedural Background[2]

After more than 20 years of marriage to Wife, Husband died on October 11, 2018. At the time of his death, Husband held an ownership interest in bank accounts, vehicles, and a house, with a collective value of $94,450. Husband also owned an IRA account at the time of his death with a balance of $386,031.40.

When Husband opened the IRA account in 2002, he designated Wife as the primary beneficiary. Wife remained the primary beneficiary on the IRA account until September 2016, at which time the IRA had an approximate balance of $450,000.

In 2016, Wife's health deteriorated. Among numerous other ailments, Wife suffered from dementia. In August 2016, Wife was placed in a long-term care facility so that she could receive additional nursing care. On September 22, 2016, Husband removed Wife as the primary beneficiary on the IRA account, and instead designated Siblings as the primary beneficiaries.[3] Around that same time, Husband asked Wife's daughter to file an application for Medicaid to assist with paying for Wife's health care at the long-term care facility. Eventually, Wife left the long-term care facility and returned home, where she

---

[2]"We view the evidence and the reasonable inferences that may be drawn therefrom in the light most favorable to the judgment, disregarding evidence and inferences to the contrary." *Pearson v. AVO General Services, LLC,* 520 S.W.3d 496, 502 (Mo. App. W.D. 2017) (quotation omitted).

[3]In addition to Siblings, Husband also designated Wife's daughter as a primary beneficiary, but subsequently removed Wife's daughter as a beneficiary in December 2016, leaving only Siblings as the remaining primary beneficiaries.

2

resided with Husband until his death in 2018. Husband did not thereafter change the beneficiary designated on his IRA account.

After Husband's death, Wife filed a petition requesting the trial court to find that the change in the beneficiary designation on Husband's IRA account was "a gift in fraud of marital rights" pursuant to section 474.150.1. After a trial to the court, the trial court entered its Judgment, including findings of facts and conclusions of law, in favor of Wife. The Judgment found that Husband's designation of Siblings as primary beneficiaries on the IRA account was intended to be a "gift in fraud of [Wife's] marital rights" pursuant to section 474.150.1.

Siblings filed this timely appeal. Additional facts will be discussed as relevant.

**Standard of Review**

In a bench-tried case, we affirm the judgment of the trial court "unless it misapplied or erroneously declared the law, or the judgment is not supported by substantial evidence, or the judgment is against the weight of the evidence." *JAS Apartments*, *Inc. v. Naji*, 354 S.W.3d 175, 182 (Mo. banc 2011) (citing *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)); *see also* Rule 84.13(d). When reviewing whether substantial evidence supported a judgment, "we accept as true the evidence and reasonable inferences therefrom in favor of the prevailing party and disregard the contrary evidence." *Burris v. Mercer County*, 252 S.W.3d 199, 201 (Mo. App. W.D. 2008). "We defer to the credibility determinations of the trial court." *Id.* We review questions of law *de novo* to determine whether the trial court misapplied the law. *JAS Apartments, Inc.*, 354 S.W.3d at 182.

3

**Analysis**

Siblings raise two points on appeal. The first point asserts that the trial court erred because there "was no competent evidence [Husband] made a gift with an intent to defraud [Wife] of her marital right to share in [Husband's] estate" as the court relied on facts "not in evidence" and "considered facts not applicable" to an IRA. Siblings' second point asserts that the trial court erred as a matter of law by applying section 474.150.1 to Husband's IRA. We address the points out of order, because we must first determine whether section 474.150.1 applies to IRA accounts before determining whether the trial court's application of the statute to Husband's IRA was supported by substantial evidence.

**Point Two**

Siblings assert that section 474.150.1 does not apply to Husband's IRA account because the beneficiary designation resulted in a nonprobate transfer such that the IRA was not part of Husband's estate, and section 474.150.1 only permits recovery of assets in a decedent spouse's estate. We disagree.

Section 474.150.1 provides:

> Any gift made by a married person, whether dying testate or intestate, in fraud of the marital rights of the surviving spouse to whom the decedent was married at the time of such gift and who may share in the decedent's estate, shall, at the election of such surviving spouse, be treated as a testamentary disposition and may be recovered from the donee and persons taking from the decedent without adequate consideration and applied to the payment of the spouse's share, as in case of his or her election to take against the will.

Section 474.150.1 codified the common-law rule against transfers of assets "in fraud of the marital rights." *Nelson v. Nelson*, 512 S.W.2d 455, 459 (Mo. App. K.C. 1974) (The

4

adoption of the phrase "in fraud of the marital rights" in section 474.150.1 "was intended to adopt the meaning of that term as it existed at common law").

At common law, "fraud of the marital rights" was recognized as a unique type of fraud. *See Potter v. Winter*, 280 S.W.2d 27, 35 (Mo. 1955); *see also Estate of Bernskoetter*, 693 S.W.2d 249, 253 (Mo. App. W.D. 1985) (discussing fraud of the marital rights as "different than an action of fraud between two parties dealing at arm's length" because it imposes a greater duty of candor between spouses in a confidential relationship). Fraud of the marital rights was viewed at common law as a claim in equity brought by a surviving spouse to defeat a conveyance or transfer of property by a decedent spouse made "without consideration and with the intent and purpose to defeat [the surviving spouse's] marital rights in [decedent's] property." *Merz v. Tower Grove Bank & Trust Co.*, 130 S.W.2d 611, 617 (Mo. 1939). If established, the equitable claim would result in the fraudulent conveyance being set aside, and in the fraudulently conveyed property being recovered by the surviving spouse to the extent of the surviving spouse's interest therein. *Id.* The central inquiry was whether the decedent spouse conveyed or transferred property "with the ***intent and purpose*** to defeat" the surviving spouse's marital rights. *Potter*, 280 S.W.2d at 35-36 (emphasis original). The form of the instrument or device used to transfer or convey the property was immaterial. *See Merz*, 130 S.W.2d at 617 (discussing that "the form of the instrument or the device resorted to is wholly immaterial, when the intent to defeat the widow's marital rights is made apparent to the chancellor").

Following enactment of section 474.150.1, and consistent with the common law, our courts have consistently applied the statute to any asset in which the surviving spouse

5

had a marital right or interest that could have been recovered in the decedent spouse's estate but for a conveyance or transfer during the marriage. *See Nelson*, 512 S.W.2d at 459 (joint bank account held by decedent and third party); *Bernskoetter*, 693 S.W.2d at 252 (joint bank accounts held by decedent and third party); *Matter of LaGarce's Estate*, 532 S.W.2d 511, 517 (Mo. App. S.L. 1975) (saving's certificate); *In Estate of McKenna*, 500 S.W.3d 850, 855-57 (Mo. App. E.D. 2016) (trust); *Hathman v. Waters*, 586 S.W.2d 376, 385-6 (Mo. App. W.D. 1979) (corporate stock transferred by third-party contract). Application of section 474.150 in each of these cases was not susceptible to differentiation based on the form or nature of the asset transferred. Instead, application of the statute focused solely on whether the asset was transferred with the intent and purpose to defeat the surviving spouse's marital rights. *See McKenna*, 500 S.W.3d at 856.

Despite consistent application of section 474.150.1 to transferred assets regardless their form or nature, Siblings maintain that IRA accounts are not subject to recovery by a surviving spouse because IRA accounts designate a beneficiary and are thus excluded from a decedent's estate under the Nonprobate Transfers Law of Missouri ("Nonprobate Transfers Law"). Siblings' argument is unavailing.

Under the Nonprobate Transfers Law, a "nonprobate transfer" is "a transfer of property taking effect upon the death of the owner, pursuant to a beneficiary designation." Section 461.005(7). The effect of the beneficiary designation is that "on death of the owner, property passes by operation of law to the beneficiary." Section 461.031.3; *see also* section 461.021. A beneficiary designation may be "revoked or changed in whole or in part during the lifetime of the owner." Section 461.033.1.

The plain language of section 474.150.1 does not differentiate between the transfer of an asset that is completed during a spouse's lifetime, and the transfer of an asset facilitated during a spouse's lifetime with a beneficiary designation that takes effect by operation of law on the spouse's death. Instead, the plain language of section 474.150.1 expresses the legislature intended to ensure that a surviving spouse can recover the marital interest in any asset transferred by a decedent spouse during the marriage, so long as the transferred asset would otherwise have been a part of the decedent spouse's testate or intestate estate, thus complementing the surviving spouse's right to elect to take against a will. *See* section 474.150.1 (stating that the statute applies regardless whether a spouse dies testate or intestate to permit recovery against fraudulently transferred assets "as in [the] case of [the surviving spouse's] election to take against the will"). As a result, it is immaterial that transfer of an asset occurs by virtue of a revocable beneficiary designation that does not take effect until a spouse's death. All that is immaterial to whether the transferring spouse had the intent and purpose to deprive the surviving spouse of a marital interest in the property. Stated another way, compliance with the statutory requirements of the Nonprobate Transfers Law does not remove property from the ambit of section 474.150.1.[4] *See, e.g. Nelson*, 512 S.W.2d at 459-60 (discussing how a transfer in the form of a joint bank account that complied with statutory requirements was no less recoverable

---

[4]In fact, the Nonprobate Transfers Law is subject to its own fraud exception set forth in section 461.054.1, which provides that "a beneficiary designation or a revocation of a beneficiary designation that is procured by fraud . . . is void." The plain language of this section is broader than section 474.150.1, which is limited to transfers of property that are in fraud of marital rights. However, the fact that section 461.054.1 contemplates the revocation of fraudulently procured beneficiary designations is certainly consistent with recognizing that transfers otherwise compliant with the statutory requirements of the Nonprobate Transfers Law remain subject to recovery under section 474.150.1.

under section 474.150.1 when evidence of fraud of the marital rights existed); *see also In re Lowe's Estate*, 519 S.W.2d 373, 377-78 (Mo. App. Spring. 1975). If "gifts or transfers otherwise recoverable under section 474.150.1 . . . became nonrecoverable by the simple expedient" of their form or device, "the salutary purposes of [] [section 474.150.1] would be thwarted." *In re Lowe's Estate*, 519 S.W.2d at 377 (discussing joint bank accounts). "Fraud is not entitled to such a sanctuary." *Id.* at 377-78.

Siblings rely on *Bishop v. Eckhard*, 607 S.W.2d 716 (Mo. App. E.D. 1980) for the proposition that unless an asset is a part of a decedent's estate at the time of the decedent's death, the asset cannot be recovered by a surviving spouse under section 474.150.1. Siblings read *Bishop* too broadly. In *Bishop*, a husband died while dissolution proceedings with wife were pending. 607 S.W.2d at 717. Prior to his death, husband's employer provided husband with life insurance benefits, a retirement annuity, and a lump sum payment on death for his accumulated contributions to the retirement plan. *Id.* Husband changed the beneficiary for all three of these retirement and life insurance benefits to his daughter while the dissolution proceedings with wife were pending. *Id.* After husband died, wife challenged all three "transfers" under section 474.150.1. *Id.*

With respect to the life insurance policy, the court found that "[t]he proceeds of an insurance policy do not belong to the insured's estate," and that as a result, section 474.150.1 did not apply to the policy. *Id.* Siblings seize on this language, and reason that nonprobate transfers do not belong to a decedent spouse's estate, and thus are not subject to section 474.150.1, because they involve property that passes by operation at law at the time of death. But if *Bishop* were read so broadly, then section 474.150.1 would be

8

rendered meaningless, as it would not apply to **any** transferred asset, as the act of transfer (whether during the decedent spouse's lifetime or by operation of law at the time of death) operates to remove the asset from the decedent spouse's estate. We will not construe a statute in a manner that renders it meaningless. *American Civil Liberties Union of Missouri v. Ashcroft*, 577 S.W.3d 881, 892 (Mo. App. W.D. 2019).

Instead, *Bishop's* reference to whether the proceeds of a life insurance policy belong to a decedent's estate as to permit recovery pursuant to section 474.150.1 refers to the simple fact that by their nature, most life insurance policies could never be a part of the owner's estate. Life insurance policies are contracts designed to provide future benefits to a named third party. *Bishop*, 607 S.W.2d at 718. Life insurance policies establish an expectancy at best, such that the naming of a beneficiary is not the conveyance or transfer of property of value to the transferring spouse during his or her lifetime, or of a property asset in which the surviving spouse has a marital interest that could be recovered in the decedent spouse's estate. *See, e.g., Lindsey v. Lindsey,* 492 A.2d 396, 399 (Pa. Super. 1985) (holding that a spouse's interest in a life insurance policy, including one with a cash surrender value, is "nothing more than an expectancy" in the policy proceeds, so that "a change in a beneficiary designation in a life insurance policy is not a conveyance or disposal of a marital asset").

*Bishop* also concluded that amounts husband's employer withdrew from husband's compensation to contribute to employer's retirement annuity were not a "part of the decedent's estate." *Id*. at 718. It was influential to the court that husband had no right to his retirement annuity (including his accumulated involuntary contributions to the plan)

9

*except* upon his termination or retirement. *Id.* The annuity, including husband's accumulated contributions to the annuity, was thus not a part of, and could never be a part of, husband's estate.[5] *Id.* Though the employer permitted husband to name a beneficiary who could recover his accumulated contributions should he die before retirement or termination, *Bishop* characterized this "arrangement" as a third-party donee contract, analogous to a life insurance policy. *Id.* Thus, section 474.150.1 was not applicable to the accumulated contributions.

*Bishop* did not hold that any property that is not a part of a decedent spouse's estate is excluded from the ambit of section 474.150.1. Instead, *Bishop* merely recognized that section 474.150.1 does not apply to property merely because it is subject to a beneficiary designation. Rather, section 474.150.1 only applies to property that a surviving spouse could have claimed a marital interest in had the property been a part of the decedent spouse's estate. Thus, the question to be asked is whether property "transferred" by a beneficiary designation is of a nature that it would have been a part of the decedent spouse's estate in the absence of a beneficiary designation. If yes, then the property is subject to recovery pursuant to section 474.150.1 because the surviving spouse would have had a marital right or interest in the property as a part of the decedent spouse's estate. If no, then the property is not subject to recovery pursuant to section 474.150.1 because fraud in the marital rights only applies to property in which a surviving spouse had a marital right that he or she could have shared in as a part of the decedent spouse's estate. *See* section

_____

[5]The court recognized, however, that wife was entitled to the monthly annuity payments from the retirement plan because the plan prohibited husband from changing the beneficiary. *Bishop*, 607 S.W.2d at 717, note 1.

10

474.150.1 ("Any gift made by a married person . . . in fraud of the marital rights of a surviving spouse . . . who may share in the decedent's estate, shall, at the election of such surviving spouse, be treated as a testamentary disposition . . . .").

Plainly, IRA accounts constitute property that would be a part of a decedent spouse's estate but for a beneficiary designation.[6] An IRA account is thus an asset in which a surviving spouse has a marital right or interest that he or she could have shared in as a part of the decedent spouse's estate. As a result, a change in the beneficiary designation on an IRA will permit recovery of the property pursuant to section 474.150.1 if it is established that the decedent spouse changed the beneficiary designation with the intent and purpose to defeat the surviving spouse's marital rights.

The trial court did not err in construing section 474.150.1 to apply to Husband's IRA account.

**Point One**

Having determined that section 474.150.1 applies to IRA accounts, we turn to Siblings' first point on appeal. Siblings' first point asserts that the trial court erred in entering Judgment in favor of Wife because there was "insufficient evidence" that the beneficiary designation was made in fraud of the marital rights. Siblings contend that there was "no competent evidence" that Husband "made a gift with an intent to defraud" Wife

---

[6]Under federal law, an IRA is tantamount to a trust. *See* 26 U.S.C. section 408(a) ("For purposes of this section, the term 'individual retirement account' means *a trust* created or organized in the United States for the exclusive benefit of an individual or his beneficiaries[.]") (emphasis added). Trust assets are recoverable under a claim they were transferred in fraud of the marital rights. *See Merz*¸130 S.W.2d at 617-18. Other jurisdictions have held similarly. *See, e.g.*, *In re Estate of Wellshear*, 142 P.3d 994, 997-98 (Okla. Civ. App. 2006) (reasoning under similar fraud of marital right rule that an IRA may be recoverable by a surviving spouse's claim of fraud against the marital rights when surviving spouse established value of the marital share of contributions).

11

and that the trial court erroneously "relied on facts not in evidence and considered facts not applicable to an [IRA]." Under our standard of review, the essence of Siblings' point on appeal is that the Judgment is not supported by substantial evidence.[7]

"Substantial evidence is evidence that, if believed, has some probative force on each fact that is necessary to sustain the [trial court's] judgment." *Ivie v. Smith*, 439 S.W.3d 189, 199 (Mo. banc 2014). "Evidence has probative force if it has any tendency to make a material fact more or less likely." *Id.* To succeed on a substantial-evidence challenge, Siblings must show "that there is no evidence in the record tending to prove a fact that is necessary to sustain the [trial court's] judgment as a matter of law." *Id.* at 200.

As already discussed, a finding of fraud of the marital rights must be supported by substantial evidence that the spouse gave away property "without consideration with the ***intent and purpose*** of defeating the marital rights of the other spouse." *Nelson*, 512 S.W.2d at 459 (emphasis added); *see also Bernskoetter*, 693 S.W.2d at 252. "Whether a transfer

---

[7]Siblings' brief fails to comply with Rule 84.04 briefing requirements. Rule 84.04(e) provides that "[f]or each claim of error, the argument shall . . . include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review." Both of Siblings points on appeal do not comply with Rule 84.04(e) and wholly forego any discussion of preservation. We remind appellants that while it is true that Rule 78.07(b) provides that "[e]xcept as otherwise provided in Rule 78.07(c), in cases tried without a jury . . . neither a motion for new trial nor a motion to amend the judgment or opinion is necessary to preserve any matter for appellate review if the matter was previously presented to the trial court," this does not obviate an appealing party's responsibility to comply with the requirements under Rule 84.04(e).

Moreover, as Rule 78.07(b) clearly states, in order for a matter to be preserved for our review, it must have been presented to the trial court. Siblings devote a significant portion of their first point on appeal to arguing that a beneficiary designation is not a "gift" under section 474.150.1. Our review of the record reveals that this argument was never presented to the trial court, and thus is not preserved for our review. Nonetheless, even if this argument had been preserved -- which it has not been -- our courts have already held that the focus of section 474.150.1 is not whether the asset was transferred as a common law "gift," but instead, the focus is the intent and purpose of the transferor spouse to defraud the surviving spouse's marital rights. *See Nelson*, 512 S.W.2d at 459; *see also In re LaGarce's Estate*, 487 S.W.2d 493, 500 (Mo. banc 1972) (discussing that the "strict" common-law requirements of a gift are dispensed with, under the statutes for joint bank accounts, for purposes of accomplishing testamentary disposition) and *Matter of LaGarce's Estate*, 532 S.W.2d 511, 517-18 (holding that transfer of assets held in joint tenancy with third party were in fraud of marital rights); *In re Lowe's Estate*, 519 S.W.2d at 377 ("[Section] 474.150.1 uses the word 'gift' and it might be argued that since [decedent] retained some control over the [joint account assets], there was no gift. This argument is unsound.")

was made in fraud of the surviving spouse's marital rights is determined by the facts and circumstances that existed at the time of the transfer." *McKenna*, 500 S.W.3d at 856.

The court found that throughout the lengthy duration of the couple's marriage, Wife had always been designated the primary beneficiary for the IRA, despite four changes to the contingent beneficiary designations. The trial court found that it was not until 2016, after Wife had entered a long-term nursing care facility, that Husband removed Wife as the primary beneficiary on his IRA. The trial court found that at about that same time, Husband instructed Wife's daughter to file a petition in an effort to qualify Wife for Medicaid assistance. The trial court concluded that Husband's "intent was to render [Wife] destitute in an ill-conceived effort to make the state and federal governments pay for his wife's care instead of him or his children."

Siblings do not challenge these factual findings. They provide substantial, direct, evidence to support the trial court's conclusion that Husband's change in the beneficiary designation on his IRA account was made with the intent and purpose of defeating Wife's marital rights in the IRA account.[8]

In addition to this direct evidence, other evidence circumstantially supported the trial court's conclusion. *Nelson*, 512 S.W.2d at 459-61, identifies several factors that are relevant to determining whether a transferring spouse had the intent and purpose to defeat

---

[8]We recognize that Husband may well have been motivated by asset protection strategies that can, if properly employed, protect all or a portion of jointly held assets from "spend down" requirements associated with securing eligibility for a spouse to receive Medicaid or other similar benefits. Though there is nothing inherently evil or nefarious about this motivation, proof of an evil motive is not required to establish "fraud in transfer of the marital rights" pursuant to section 474.150.1. So long as one spouse's transfer of property was for the intent and purpose of defeating the other spouse marital rights in the property, section 474.150.1 may be applied to recover the transferred property to the extent of the surviving spouse's interest in the property.

13

the other spouse's marital rights, including: (1) whether the transfer lacked consideration; (2) whether transferor-spouse retained control over the asset in question; (3) whether the amount of the transfer is disproportionate compared to the value of the transferor-spouse's total estate; and (4) whether the transferor-spouse made the transfer openly and with frank disclosure. *See also McKenna*, 500 S.W.3d at 856.[9]  However, "it is not essential in an action under section 474.150 that every indicator discussed in *Nelson* be proven to sustain a finding of fraudulent intent." *Matter of Estate of Froman*, 803 S.W.2d 176, 179 (Mo. App. S.D. 1991).  Rather, these "indicators" or badges of fraud "serve as 'guidelines' to a court faced with determining the intent of a deceased person." *Id.*

### *Whether the transfer lacked consideration*

Siblings acknowledge that neither gave Husband anything in consideration for the change in beneficiary designation in their favor, and that the financial advisor overseeing Husband's IRA testified that no payment was made in consideration of the change in beneficiary designation.  The trial court found that "the credible evidence . . . demonstrates that [Siblings] gave no consideration of any kind in exchange for their acquisition of [Husband's] IRA.  Neither [sibling] contributed any money to the fund or gave any money to [Husband] in exchange for the [beneficiary] designation."

---

[9]Other factors may also be considered, including "a showing of contemplation of imminent death by the transferor-spouse." *Nelson*, 512 S.W.2d at 463.  And while not relevant here, in circumstances where a spouse dies while separated from the surviving spouse or amid dissolution proceedings, our courts have also considered factors including, "the timing of the transfers in relation to the decedent's separation from his surviving spouse; whether, around the time of the transfers, the decedent place jointly-held assets beyond [the surviving spouse's] control; and the effects of the transfers on the reasonable expectations of the surviving spouse." *McKenna*, 500 S.W.3d at 856 (discussing *In Matter LaGarce*, 532 S.W.2d at 516-17).

14

Siblings argue that the lack of consideration is irrelevant to the designation of beneficiaries when considering fraudulent intent.[10] *Nelson* instructs otherwise.[11] The trial court's conclusion that Husband received no consideration for the change in beneficiary designation favoring Siblings is supported by substantial evidence.

### *Whether transferor-spouse retained control over the asset in question*

Siblings do not contend that there was no evidentiary support for a finding that Husband retained control over the IRA after his change in the beneficiary designation, and instead contend that retention of control over the IRA was irrelevant. *Nelson* instructs otherwise. Siblings testified that Husband retained control of the IRA during the remainder of his life and the trial court found accordingly, reasoning that retention of control over the IRA was a material factor favoring a finding of fraudulent intent. The trial court's findings and conclusions with respect to this factor were supported by substantial evidence.

### *Whether the amount of the transfer is disproportionate compared to the value of the transferor-spouse's total estate*

Siblings contend that the trial court's calculations of Husband's total estate at the time of the change in the IRA beneficiary designation were erroneous because Wife "would

---

[10]Siblings contend that lack of consideration is irrelevant to the transfer because Husband only designated beneficiaries thus "no present interest was transferred." Alternatively, Siblings assert that if there was a transfer, "it is the relationship of the decedent and the named beneficiaries that accounts for the consideration to be named as a beneficiary." Siblings fail to cite any legal authority for their contentions.

[11]Under the common law, the lack of consideration was indicative of fraud because it evidenced that a gift occurred and there were no otherwise enforceable agreement governing the transfer of assets, as the consideration would in theory enlarge the surviving spouse's inheritable estate. *See Lusse v. Lusse*, 120 S.W. 114, 115-16 (Mo. App. S.L. 1909) (holding that a property transferred to a son for "adequate consideration" was not in fraud of the surviving spouse's marital rights). Since the adoption of section 474.150.1, our courts have continued to regard a lack of consideration paid by the benefitting party to a transferor spouse as indicative of transferor spouse's intent to defraud surviving spouse of marital rights. *See e.g., Bernskoetter*, 693 S.W.2d at 252; *Nelson*, 512 S.W.2d at 459; *Matter of LaGarce's Estate*, 532 S.W.2d at 515; *In re Lowe's Estate*, 519 S.W.2d at 377.

15

have received a fair share of [Husband's] augmented estate and the size of the alleged transfer would not have been disproportionate to the entire estate." [Appellant's Br., p. 24].

To determine whether the amount of the transfer was disproportionate compared to the Husband's total estate, it is "necessary to examine the whole of [Husband's] estate at the time" the change in the beneficiary designation occurred on September 22, 2016. *Nelson*, 512 S.W.2d at 460. To determine the value of Husband's total estate at the time of this change, the trial court primarily relied on Siblings' Exhibit D, Petition For Appointment of Co-Guardians and Co-Conservators, which was filed by Wife's daughter in March 2017 when Wife's daughter and son from a previous marriage sought appointment as co-guardians and co-conservators of Wife and her finances. The trial court found that the value of the estate in March 2017 was a "fair market value" of the same assets on September 22, 2016, and concluded from defendant Siblings' Exhibit D that the total estate that Wife stood to take at the time of the change in the IRA beneficiary designation was $51,569.[12] The trial court found that the value of the IRA on September 22, 2016 was approximately $450,000, based on the testimony of the financial advisor overseeing the

---

[12]The trial court computed this sum in a manner consistent with the trial court in *Nelson*, where the court discounted marital assets by one-half under the rationale that "one-half of [] jointly held property represented the wife's own property and therefore was not taken by the wife simply by survivorship." 512 S.W.2d at 462-63. Here, the marital home and bank accounts consisted of the estate's jointly-held property, while the vehicles were deemed titled solely to Husband. In calculating the total value of Husband's estate, excluding the IRA, the trial court applied a similar approach as in *Nelson* and discounted jointly-held property by half its value, while attributing the full value to Husband's separately-titled vehicles. To the extent that Siblings contend this approach was erroneous, the claim exceeds the scope of the point relied on, and thus is not preserved for our review. *See The Schumacher Group, Ltd v. Schumacher*, 474 S.W.3d 615, 624 n. 11 (Mo. App. W.D. 2015).

Nonetheless, even if we were to forego the *Nelson* approach of calculating the Wife's share of the estate at the time of the beneficiary designation by discounting marital property by one-half, and include the undiscounted value of the estate at $94,450, as well as $42,300 in term life insurance proceeds, which Siblings additionally contend were erroneously excluded from the calculation of Wife's share, the transfer would still be disproportionate.

16

IRA assets. The trial court concluded the transfer on September 22, 2016 was disproportionate. These findings and conclusions were supported by substantial evidence.

*Whether the transferor-spouse made the transfer openly and with frank disclosure*

Siblings contend that no evidence supports the trial court's conclusion that Husband made the beneficiary designation without open and frank disclosure with Wife. Siblings assert that no evidence to this effect was adduced because Wife was unable to testify due to her dementia.

There was substantial evidence to support a finding that the beneficiary designation was made without frank disclosure or openness with Wife despite the fact that Wife did not testify. The trial court found that Husband "made [the] beneficiary designation without any disclosure to [Wife]." The trial court's finding was supported by the testimony of the financial advisor overseeing the IRA's assets, who testified that Husband was not accompanied by Wife at the time of any of his beneficiary designations. Other testimony established that at the time of the relevant beneficiary designation, Wife was living at a long-term care facility. Additionally, testimony established that Wife, while living in the long-term care facility, continued to believe she was the primary beneficiary on the IRA. Testimony also established that Wife was under the impression that the IRA was intended to pay for the couple's care as they aged. Substantial evidence supported the trial court's conclusion that Husband changed the beneficiary designation on his IRA account without frank discussion with or disclosure to Wife.

17

In sum, under each *Nelson* factor, substantial circumstantial evidence supports the inference that that Husband intended to defeat Wife's marital rights in the IRA account when he changed his beneficiary designation. Coupled with direct evidence that Husband changed the beneficiary on his IRA account in an effort to secure government assistance to pay for Wife's long-term care facility expenses, there is no question that substantial evidence supports the trial court's conclusion that Husband's purpose and intent was in fraud of the marital rights pursuant to section 474.150.1.

Point One is denied.

## Conclusion

The trial court's Judgment is affirmed.


_Cynthia L. Martin_____
Cynthia L. Martin, Judge


All concur

18